IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ERIC HOLT, | : | Case No. 3:12-cv-218 |
| Plaintiff, | : | District Judge Thomas M. Rose<br>Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF<br>SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" within the meaning of the Social Security Act and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's Memorandum in Opposition (doc. 11), Plaintiff's Reply (doc. 12), the administrative record (doc. 6),[2] and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID.

I.  BACKGROUND

A.  Procedural History

Plaintiff filed his applications for DIB and SSI on May 7, 2008, alleging a disability onset date of March 26, 2008.  PageID 148-54.  Plaintiff claims he is disabled due to multiple left leg injuries sustained in an all-terrain vehicle ("ATV") accident.  PageID 172, 218-19.  Following initial administrative denials of his application, an administrative hearing was conducted before ALJ Carol Bowen on March 30, 2010.  PageID 77-100.  On May 17, 2010, the ALJ issued a written decision, concluding that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act.  PageID 62-70.

Specifically, the ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013;

2. The claimant has not engaged in substantial gainful activity since March 26, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has the following severe impairments: residuals of tibial plateau fracture with fixation; compartment syndrome, left knee (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he requires opportunity to alternate sitting and standing as needed during the day. He can occasionally operate foot controls with the left lower extremity. He can climb stairs or ramps occasionally, but he cannot climb ladders, ropes or scaffolds. He is restricted to frequent stooping, occasional kneeling, and occasional crouching and crawling. He requires a cane to ambulate on uneven surfaces

or for prolonged ambulation. He must avoid exposure to extreme cold, hazardous machinery, and unprotected heights;[3]

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born [in] 1980, and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)); and

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 26, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 64-70 (footnote added).

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 55-57. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal on July 3, 2012. Doc. 1.

---

[3] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 416.967. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 416.967(b).

## B. Hearing Testimony

At the administrative hearing, Plaintiff testified that he has not worked since he injured his left leg in the March 2008 ATV accident. *See* PageID 82. Plaintiff underwent four surgeries on his left leg shortly after the accident, and an additional knee surgery in October 2009. *See* PageID 85, 91-92. Plaintiff developed compartment syndrome[4] after his first surgery. PageID 91.

Plaintiff testified that he has pain and swelling in his left leg when standing or sitting, and has difficulty walking on uneven ground. PageID 88-93. He sees a pain management specialist on a monthly basis, and takes pain medication, a muscle relaxer, and over-the-counter Ibuprofen. PageID 83. Additionally, he keeps his leg elevated to avoid swelling, PageID 84, and uses a cane when he leaves his house. PageID 88.

Charlotta Ewers, a vocational expert ("VE"), also testified at the hearing. PageID 93-98. She testified that Plaintiff could not perform his past relevant work as a security guard, a cable installer, a furniture deliverer, a crane operator or a material handler. PageID 94-95. The VE further testified that a hypothetical individual with Plaintiff's vocational profile and the RFC described in Finding No. 5 could perform 5,000 jobs in the regional economy. PageID 94-96. These 5,000 jobs accommodate leg elevation to the footstool height. PageID 96.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed

---

[4] Compartment syndrome is "a condition in which increased pressure in a confined anatomic space adversely affects the circulation and threatens the function and viability of the structures therein." *Stedman's Medical Dictionary* 1894-95 (28th ed. 2006).

the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3)[5]; *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which [he or she] can act, without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB and/or SSI benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from: (1) performing his or her past job; and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

---

[5] The remaining citations will identify the pertinent DIB regulations with full knowledge of the corresponding SSI regulations.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. ANALYSIS

#### A.

On appeal, Plaintiff argues the ALJ erred in rejecting two treating source opinions -- that he is unable to perform full-time work. *See* doc. 8 at PageID 444-50. This argument is unavailing. The ALJ properly considered these opinions but, finding they lacked support in the medical record, declined to give them controlling or deferential weight. *See* PageID 68.

While the medical opinions of treating physicians are generally entitled to greater weight than those of consulting physicians, a treating physician's conclusory statement -- that the

claimant is disabled -- is not determinative of the ultimate issue. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Rather, a treating physician's opinion is to be given controlling weight only if it is well-supported by medically acceptable clinical and laboratory techniques, and not inconsistent with the other evidence of record. *See* 20 C.F.R. § 404.1527(c)(2); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). Accordingly, an ALJ may properly reject a treating physician's opinion that does not meet these standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-31 (6th Cir. 1997).

Plaintiff first argues that the ALJ erred in rejecting the February 2009 opinion of his orthopedic surgeon, Frederick Reeve, M.D., that Plaintiff is unemployable. *See* doc. 8 at PageID 444-48, PageID 415-16. In that report, Dr. Reeve opined that Plaintiff can sit or stand/walk for only two hours total in an eight-hour day, and cannot lift or carry more than five pounds.[6] PageID 416.

The ALJ articulated good reasons for discrediting Dr. Reeve's opinion: she found the opinion was unsupported by, and inconsistent with, the medical record. *See* PageID 68; 20 C.F.R. § 404.1527(c)(2). As the ALJ acknowledged, Dr. Reeve's opinion is contradicted by his own treatment notes taken the same day he completed the disability form -- observing that Plaintiff's knee was stable and not tender, and recommending a follow-up visit only if necessary.[7] *See* PageID 421. Indeed, when Dr. Reeve next saw Plaintiff six months later, he indicated that Plaintiff was recovering well. *Id.* Accordingly, the ALJ's decision -- to accord "little weight" to Dr. Reeve's opinion -- is supported by substantial evidence and compliant with

---

[6] Dr. Reeve's report initially indicated that Plaintiff was "employable," and able to lift or carry up to fifty pounds. *See* PageID 327. However, Dr. Reeve resubmitted the form -- with the "unemployable" and the "five-pound limitation" boxes checked. PageID 416.

[7] Dr. Reeve's treatment notes state "f/u prn." PageID 421. "F/u" stands for "follow-up"; and "prn" stands for the Latin phrase, *pro re nata*, meaning "as the occasion arises; when necessary." *Stedman's Medical Dictionary* 776, 1562 (28th ed. 2006).

Social Security regulations.  *Accord Lane v. Astrue*, 839 F. Supp. 2d 952, 970-71 (S.D. Ohio 2012) (Rose, J.; Newman, M.J.) (finding the ALJ's decision -- to not afford controlling weight to the treating doctors' opinions -- was supported by substantial evidence because the opinions were inconsistent with the treatment notes and unsupported by the medical record).

Second, Plaintiff claims the opinion of his treating pain specialist, Bruce Kay, M.D., is also entitled to controlling or deferential weight.  *See* doc. 8 at PageID 445-48.  This argument is likewise unpersuasive.  In April 2010, Dr. Kay completed a medical assessment form, and opined that Plaintiff could not perform even sedentary work.  PageID 428-31.  He specifically reported that Plaintiff can lift or carry no more than ten pounds occasionally and five pounds frequently; can stand/walk no longer than half an hour at one time, and one hour total in an eight-hour workday; can sit no longer than one hour at one time and two hours total in an eight-hour workday; and cannot climb, balance, kneel, stoop or crawl.  *Id.*  Dr. Kay also opined that Plaintiff must elevate his legs above heart level to relieve swelling.  PageID 430.

The ALJ gave "[s]ome weight…to [Dr. Kay's] assessment in terms of limiting the claimant to a maximum of [ten pounds] and the opportunity to alternate between sitting and standing."  PageID 68.  However, the ALJ discredited Dr. Kay's recommendation that Plaintiff be restricted to three hours of sitting, standing and walking in one day, and also that Plaintiff be required to elevate his leg to above heart level.  *Id.*  The ALJ reasonably found that these recommended restrictions were unsupported by the medical record.  Although Plaintiff had swelling after his surgery, *see* PageID 251, 254, 264, 272, 274, more recent records state that his swelling "ha[d] gone down dramatically" and "[n]eurologically, he is grossly intact," *see* PageID 356, and show only mild edema or none at all.  *See* PageID 237, 343, 346, 362, 372.  Dr. Kay also reported on several occasions that Plaintiff has a good range of motion in his left knee, *see*

PageID 356, 362, 372, 403, and his gait is "normal." *See, e.g.*, PageID 359, 361, 364. Additionally, although Dr. Kay prescribed Plaintiff a cane, it was "only to use for long distance … not on a regular basis," and he recommended that Plaintiff "ambulate as much as possible." PageID 370. Accordingly, the ALJ's rejection of Dr. Kay's leg elevation and sitting/standing/walking restrictions is supported by substantial evidence.

### B.

Plaintiff also makes a cursory argument that his left leg condition meets or equals the criteria of Listing § 1.02 for a major dysfunction of a joint. *See* doc. 8 at PageID 448-49. Listing § 1.02 requires a finding that the claimant has an "inability to ambulate effectively," which is defined as "extreme limitation of the ability to walk … *i.e.*, having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00(B)2(b), 1.02A. "[E]xamples of ineffective ambulation include … the inability to walk without the use of a walker, two crutches or two canes." *Id.* As discussed above, Plaintiff's ambulatory abilities are not so limited. *See, e.g.*, PageID 356, 372. To the contrary, Dr. Kay recommended that Plaintiff ambulate without the use of a cane, and cautioned against using a cane frequently but, rather, only for long distances. *See* PageID 370-71. The ALJ thus reasonably found that Plaintiff is "not rendered incapable of ambulating effectively as defined in the Listings of Impairments." PageID 65.

### C.

In conclusion, substantial medical evidence supports the ALJ's finding that Plaintiff's left leg impairments, singly or in combination, do not constitute a disability under the Social Security Act. It is not the Court's role to sift through the record and make a *de novo* determination of

whether or not a claimant is disabled. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Where, as here, there is substantial evidence supporting the ALJ's resolution of the disputed medical evidence, the Court must affirm the ALJ even if the Court might have resolved such evidence in Plaintiff's favor had it been the trier of fact. *See id.*; *Nunn v. Bowen*, 828 F.2d 1140, 1144 (6th Cir. 1987).

## IV. RECOMMENDATION

For the foregoing reasons, Plaintiff's assignments of error are not well-taken.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability finding be found supported by substantial evidence, and **AFFIRMED;** and

2. This case be **CLOSED**.

June 5, 2013                                              s/ **Michael J. Newman**
                                                          United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).